UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CAESARE CUNNINGHAM, as ADMINSTRATOR OF THE ESTATE OF OSCAR DEPRIEST,<br><br>     Plaintiff,<br><br>v.<br><br>MEDIKO, INC.<br><br>VIRAT BAKHSHI, M.D.,<br><br>LINDA THOMAS, LPN,<br><br>and<br><br>SHELBY CORKER, LPN<br><br>     Defendants. | Case No. 3:22-cv-00158 |

## COMPLAINT

Plaintiff Caesare Cunningham ("Mr. Cunningham"), as Administrator of the Estate of Oscar DePriest, by counsel and for his Complaint seeking judgment against Defendants MEDIKO, Inc. ("MEDIKO"), Virat Bakhshi, M.D. ("Dr. Bakhshi"), Linda Thomas, LPN ("LPN Thomas"), and Shelby Corker, LPN ("LPN Corker") (collectively, "Defendants"), respectfully states as follows:

## JURISDICTION AND VENUE

1.  This Court is vested with subject matter jurisdiction over Mr. Cunningham's 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), (4). The Court is vested with supplemental jurisdiction over Mr. Cunningham's state law claims pursuant to 28 U.S.C. § 1367.

2.  Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the

acts and omissions giving rise to Mr. Cunningham's claims occurred within the Eastern District of Virginia.

3. Assignment to the Richmond Division of the Eastern District of Virginia is proper pursuant to Eastern District of Virginia Local Rules 3(B)(4) and 3(C) because a substantial part of the acts and omissions giving rise to Mr. Cunningham's claim occurred in Richmond, Virginia.

## PARTIES

4. Mr. Cunningham is the Administrator of the Estate of Oscar DePriest ("Mr. DePriest"). At all times mentioned infra, Mr. DePriest was a pretrial detainee being held at the Richmond City Justice Center ("RCJC").

5. At all times mentioned infra, MEDIKO was a private corporation under contract with the City of Richmond to provide medical care to the inmates and detainees being held at the RCJC on all dates discussed infra. The contract also required MEDIKO to develop all necessary policies and procedures to ensure that the medical care provided at the RCJC complied with the requirements of federal and state law.

6. At all times mentioned infra, Dr. Bakhshi, LPN Hopkins, and LPN Corker were employed by MEDIKO to provide medical care to the inmates and detainees being held at the RCJC.

## FACTUAL ALLEGATIONS

7. At all times mentioned infra, Sheriff Antoinette V. Irving ("Sheriff Irving") was the constitutional officer charged with the operation of the Richmond City Justice Center ("RCJC").

8. During the early months of 2020, the COVID-19 pandemic began spreading throughout the United States, including in Richmond, Virginia.

9. In May 2020, Sheriff Irving revised an internal operating policy entitled Policy 141 – Pandemic Preparedness ("Policy 141"). The purpose of revising Policy 141 was to provide guidance to correctional and medical staff at RCJC on responding to the impacts of COVID-19 on the inmates/detainees being housed at the RCJC.

10. Notably, the revised version of Policy 141 required a medical provider to conduct daily face-to-face rounds with all inmates/detainees being held in medical quarantine due to COVID-19.

11. As of August 2020, the CDC had published guidelines for the medical administrators of jails and prisons concerning the management of COVID-19 in correctional settings. These guidelines were contained in the CDC's "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities." An authentic copy of the CDC's "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities" as it existed at the time that Mr. DePriest tested positive for COVID-19 is appended to this Complaint as **Exhibit A**.

12. The CDC's Interim Guidance on Management of Coronavirus Disease 2019 specifically provided the following with respect to the clinical care of detainees/inmates who testified positive for COVID-19:

> Staff evaluating and providing care for confirmed or suspected COVID-19 cases should follow the CDC Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19).

Ex. A at 23.

13. An authentic copy of the CDC'S Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19) referenced in the above language as

3

it existed at the time Mr. DePriest tested positive for COVID-19 is appended to this Complaint as **Exhibit B**.

14. The CDC'S Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19) made clear that Mr. DePriest's age and preexisting medical conditions (including hypertension and diabetes) predisposed him to experiencing severe illness from COVID-19.  Ex. B at 5.  These conditions were documented in Mr. DePriest's medical chart well before August 17, 2020.

15. Additionally, the CDC's Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19) **provided that patients with risk factors for severe illness should be monitored closely given the possible risk of progression to severe illness, especially in the second week after symptom onset**.  Ex. B at 6.

16. Policymakers employed by MEDIKO regularly monitored CDC guidance with respect to COVID-19 and were subjectively aware of the need for COVID-19 patients to receive such monitoring and the risks that any delay in identifying individuals suffering from severe respiratory illness secondary to COVID-19 would pose to the inmates/detainees under their care (such as Mr. DePriest), to include a substantial risk of permanent injury and/or death.

17. Notwithstanding the foregoing, these MEDIKO policymakers did not implement <u>any</u> policies or protocols at the RCJC calling for the heightened monitoring of at-risk individuals prior to August 25, 2020.

18. On or about August 14, 2020, MEDIKO staff at the RCJC tested Mr. DePriest for COVID-19.

19. On August 17, 2020, the Virginia Department of Health notified MEDIKO staff at the RCJC that Mr. DePriest had tested positive for COVID-19.

20. On August 18, 2020, Mr. DePriest was placed in isolation in Housing Unit 3E as a consequence of the diagnosis.

21. On August 19, 2020, Mr. DePriest reported to the RCJC medical department due to complaints of body aches. He had an increased temperature of 99.6 °F and was determined to be hypotensive (i.e., have abnormally low blood pressure).

22. On August 19, 2020, Dr. Bakhshi saw Mr. DePriest in Housing Unit 3E. Mr. DePriest reported that he had been suffering from shortness of breath, lightheadedness, and dizziness, for the last several days. He also reported that his shortness of breath had worsened over the last few days. On examination, Dr. Bakhshi noted that Mr. DePriest was in slight respiratory distress and documented the presence of scattered rhonchi and diminished breath sounds in both lungs. He also noted that Mr. DePriest was hypotensive, tachycardic, and suffering from a low grade fever.

23. As a result of his examination of Mr. DePriest, Dr. Bakhshi knew that Mr. DePriest was suffering from respiratory distress secondary to COVID-19 and that such an illness had the potential to become life-threatening if it worsened. Accordingly, he ordered that Mr. DePriest be provided an Albuterol inhaler to keep on his person.

24. On August 20, 2020, at approximately 10:00 a.m., Mr. DePriest attended sick call with Dr. Bakhshi as a follow-up to his visit the prior day. Mr. DePriest reported that his shortness of breath had improved slightly and that he was not as short-winded as the day before. On examination, Dr. Bakhshi found that Mr. DePriest's breath sounds had improved. However, no additional care was ordered. Moreover, despite his awareness of the requirements of Policy 141 and the risk that Mr. DePriest's respiratory condition could quickly deteriorate and become

life-threatening in the days that followed, Dr. Bakhshi never returned to Housing Unit 3E to examine and/or assess Mr. DePriest prior to the morning of August 25, 2020.

25. On August 20, 2020, at approximately 2:00 p.m., Mr. DePriest's criminal defense attorney, Meredith Childs ("Ms. Childs"), reported to the RCJC for a legal visit with Mr. DePriest. She had to conduct the visit by video due to Mr. DePriest's COVID-19 diagnosis.

26. When Ms. Childs observed Mr. DePriest on the screen, she immediately knew that he was very ill. She observed that Mr. DePriest was hunched over, sluggish, and appeared to be physically drained. Indeed, Mr. DePriest was exceedingly short of breath to the point of being able to say only 3-4 words at a time without having to catch his breath. Mr. DePriest's breathing was heavy and labored, and he struggled to answer questions as the meeting progressed. By the end of the meeting, Ms. Childs observed that it had become very difficult for Mr. DePriest to breathe or talk at all. Ms. Childs advised a nearby deputy that Mr. DePriest was very ill and needed to be sent to the hospital. The deputy responded that an RCJC doctor was checking on inmates with COVID **once per day**.

27. On both August 21, 2020 and August 22, 2020, no member of MEDIKO's staff monitored Mr. DePriest's condition. Mr. DePriest spent the entirety of both days in bed due to the effects of COVID-19.

28. On August 23, 2020, Mr. DePriest was visibly weakened by his illness and spent the entire day in his bed with the exception of breakfast and lunch. Mr. DePriest even refused his dinner that evening.

29. This pattern continued on August 24, 2020, with Mr. DePriest again remaining in bed for the entirety of the day with the exception of meal time.

30. LPN Hopkins was the nurse responsible for monitoring Mr. DePriest's medical condition during the shift spanning 7 a.m. – 7 p.m. of August 24, 2020.

31. LPN Corker was the nurse responsible for monitoring Mr. DePriest's medical condition during the shift spanning 7 p.m. of August 24, 2020 – 7 a.m. of August 25, 2020.

32. LPNs Hopkins and Corker knew that their responsibilities during these shifts included periodically checking on Mr. DePriest to ensure that his vital signs remained stable, assessing whether his respiratory function was declining, and monitoring him for other signs and symptoms of worsening COVID-19.

33. LPNs Hopkins and Corker knew that regularly assessing and monitoring Mr. DePriest was necessary to protect him from the risk of serious harm posed by COVID-19 due to the propensity of the virus to impair respiratory function and cause severe illness.

34. Notwithstanding the foregoing, neither LPN Hopkins nor LPN Corker performed a proper assessment of Mr. DePriest from (at a minimum) 4:00 a.m. on August 24, 2020 – 11:30 a.m. on August 25, 2020 (and likely longer).

35. Had Dr. Bakhshi, LPN Hopkins, or LPN Corker performed an actual assessment of Mr. DePriest prior to the morning of August 25, 2020, it would have been obvious to them that his condition had deteriorated and that he required hospital care.

36. Unfortunately, by the time a nurse did check on Mr. DePriest at 11:30 a.m. on the morning of August 25, 2020, his condition had deteriorated to the point that he was struggling to breathe. As a result, his oxygen saturation levels were exceedingly low (40%).

37. Medical staff called 911 and emergently transported Mr. DePriest to the hospital. Unfortunately, his illness had become too severe at that point and his respiratory function did not

improve.  Consequently, Mr. DePriest died from the effects of COVID-19 shortly after arriving at the hospital.

## COUNT I – WRONGFUL DEATH
## (All Defendants)

38. Mr. Cunningham incorporates the foregoing allegations of this Complaint by reference as if fully restated herein.

39. By virtue of their relationship to Mr. DePriest as healthcare providers under the Virginia Medical Malpractice Act, Dr. Bakhshi, LPN Hopkins, and LPN Corker, while acting within the course and scope of their employment with MEDIKO, owed Mr. DePriest a duty to exercise reasonable care in the evaluation and treatment of his COVID-19 and to comply with the standard of care set forth in Virginia Code § 8.01-581.20.

40. Dr. Bakhshi, LPN Hopkins, and LPN Corker breached each of their duties owed to Mr. DePriest and were otherwise negligent while acting in the course and scope of their employment with MEDIKO by: (i) failing to properly monitor Mr. DePriest's symptoms, (ii) failing to evaluate Mr. DePriest's condition, (iii) failing to implement any orders or protocols to ensure that Mr. DePriest received continuing evaluation and care, (iv) ignoring guidance and Policy 141 that required them to monitor Mr. DePriest's condition daily, (v) denying Mr. DePriest access to necessary hospital care, and (vi) by otherwise failing to evaluate and treat Mr. DePriest's worsening COVID-19 and related symptoms.

41. Because these breaches of the standard of care occurred while Dr. Bakhshi, LPN Hopkins, and LPN Corker were acting within the course and scope of their employment with MEDIKO, MEDIKO is vicariously liable for the damages proximately caused by those breaches of the standard of care.

42. As a direct and proximate cause of the breaches of the standard of care articulated in this Count, Mr. DePriest's COVID-19 worsened to the point of being untreatable and there was a fatal delay in the provision of hospital care that Mr. DePriest desperately needed.

43. Accordingly, as a direct and proximate cause of the breaches of the standard of care articulated in this Count, the beneficiaries of Mr. DePriest have suffered damages in the form of sorrow and mental anguish, and the loss of Mr. DePriest's comfort, guidance, companionship, society, and advice.

### COUNT II– 42 U.S.C. § 1983 (Fourteenth Amendment Violation)
### (All Defendants)

44. Mr. Cunningham incorporates the foregoing allegations of this Complaint by reference as if fully restated herein.

45. As a pretrial detainee being housed at the RCJC, Mr. DePriest had a right under the Fourteenth Amendment to receive constitutionally adequate medical care for his objectively serious medical needs.[1]

46. By virtue of MEDIKO's contract with the City of Richmond, MEDIKO, Dr. Bakhshi, LPN Hopkins, and LPN Corker acted under color of state law in performing their medical duties at the RCJC.

47. Mr. DePriest's diagnosis of COVID-19 (and its sequelae) was a condition that had been diagnosed by a physician as requiring medical care. Moreover, it was an illness that eventually rendered Mr. DePriest sufficiently ill that any lay person would have recognized an obvious need for medical intervention on his behalf. In fact, Ms. Childs recognized the obvious

---

[1] In the alternative, to the extent Mr. DePriest was an inmate rather than a pretrial detainee, this right would have been afforded to him by the Eighth Amendment.

9

seriousness of Mr. DePriest's condition on August 20, 2020. Accordingly, Mr. DePriest's condition constituted an objectively serious medical need.

48. Policymakers employed by MEDIKO were subjectively aware of the need for MEDIKO's COVID-19 patients to receive frequent monitoring and of the risks of severe harm that any delay in identifying individuals suffering from severe respiratory illness secondary to COVID-19 would pose to the inmates/detainees under their care (such as Mr. DePriest), to include a substantial risk of permanent injury and/or death.

49. Notwithstanding the foregoing, these MEDIKO policymakers exhibited deliberate indifference to the needs of their patient population (to include Mr. DePriest) by failing to implement any policies or protocols at the RCJC calling for the heightened monitoring of at-risk individuals prior to August 25, 2020.

50. As a direct and proximate cause of MEDIKO's failure to implement any orders, policies, or protocols at the RCJC calling for the heightened monitoring of at-risk individuals prior to August 25, 2020, Mr. DePriest was virtually ignored by medical staff at the RCJC. This lack of observation allowed Mr. DePriest's COVID-19 symptoms to significantly worsen and his condition to deteriorate to the point of being irreversible and fatal. This untreated deterioration in Mr. DePriest's condition caused Mr. DePriest to experience significant pre-death pain and suffering (both physical and mental).

51. Additionally, Dr. Bakhshi, LPN Hopkins, and LPN Corker were aware of Mr. DePriest's COVID-19 diagnosis, and were also aware of the need to regularly monitor and properly assess Mr. DePriest to identify any decline in his respiratory function early enough so that life-saving interventions and hospital care could be offered to Mr. DePriest. Dr. Bakhshi, LPN Hopkins, and LPN Corker were further aware that failing to timely detect such

developments in Mr. DePriest's clinical condition would place him at increased risk for serious injury and/or death.

52. Notwithstanding that knowledge, Dr. Bakhshi, LPN Hopkins, and LPN Corker exhibited deliberate indifference to Mr. DePriest's objectively serious medical need in choosing not to properly assess or monitor Mr. DePriest's medical status after August 20, 2020.

53. Furthermore, to the extent the holding of Kingsley v. Hendrickson, 576 U.S. 389 (2015), applies to this case, Dr. Bakhshi, LPN Hopkins, and LPN Corker acted in a constitutionally unreasonable manner in choosing not to properly assess or monitor Mr. DePriest's medical status after August 20, 2020.

54. As a direct and proximate cause of the unconstitutional conduct articulated in this Count, Mr. DePriest suffered severe pre-death pain and suffering (physical and mental) and died from the effects of COVID-19. The beneficiaries of his estate have also suffered mental and emotional distress and will continue to suffer emotional distress in the future as a direct and proximate result of Defendants' unconstitutional conduct.

WHEREFORE, Mr. Cunningham demands judgment against Defendants jointly and severally in the sum of TWO MILLION DOLLARS ($2,000,000.00) for compensatory damages, plus interest, punitive damages in the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), and his fees and costs expended in this action pursuant to 42 U.S.C. § 1988.

TRIAL BY JURY IS DEMANDED.

                         Respectfully submitted,

                         CEASAR CUNNINGHAM
                         Administrator of the Estate of
                         OSCAR DePRIEST

                         By: _____/s/_____

                         Jonathan E. Halperin (VSB No. 32698)
                         Isaac A. McBeth (VSB No. 82400)
                         Halperin Law Center, LLC
                         4435 Waterfront Drive, Suite 100
                         Glen Allen, VA 23060
                         T: (804) 527-0100
                         F: (804) 597-0209
                         isaac@hlc.law
                         *Co-counsel for Plaintiff*

                         and

                         Seth Carroll (VSB No. 74745)
                         Commonwealth Law Group
                         3311 West Broad Street
                         Richmond, Virginia 23230
                         (804) 999-9999
                         scarroll@hurtinva.com
                         *Co-counsel for Plaintiff*